UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:13-cr-222 |
| v. | ) | |
| | ) | HONORABLE PAUL L. MALONEY |
| SANDRA WHITE, | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION

This matter is before the Court on Defendant Sandra White's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.[1] (ECF No. 163.) White claims that she received ineffective assistance of counsel at various stages of her trial and subsequent appeal. For the reasons to follow, the Court will deny the motion and deny a certificate of appealability.

### I.    Background

Sandra White operated a travel agency with her husband. She got better rates for her clients by booking them for military-rate travel and manufactured counterfeit military identification cards to accomplish the scam. Eventually, the federal government caught the scheme, first indicting Sandra on November 11, 2013, (ECF No. 1), and then superseding the indictment in February 2014 to add Joseph as a defendant. (ECF No. 2.) In June 2015, a jury convicted Sandra White of wire fraud and aggravated identity theft in violation of 18

---

[1] Pursuant to § 22255(b), the Court does not find that an evidentiary hearing is warranted on Petitioner's claims, as the record contains sufficient information to evaluate the merit of the issues presented. *See Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999).

U.S.C. §§ 1343 and 1028A. The Sixth Circuit affirmed White's conviction on appeal. *United States v. White*, 846 F.3d 170 (6th Cir. 2017). White then timely filed this petition under 28 U.S.C. § 2255 on April 16, 2018. (ECF No. 163).

## II.  Legal Framework

To obtain relief under § 2255, a petitioner must show: (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," or (3) "the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." 28 U.S.C. § 2255.

A violation of the Sixth Amendment's guarantee to effective assistance of counsel is a frequently litigated avenue of collateral attack. U.S. Const. amend. VI. The standard for ineffective assistance of counsel, as established in *Strickland v. Washington*, requires a petitioner to prove (1) that defense counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability that, but for the unprofessional errors, the outcome of the proceedings would have been different. 466 U.S. 668, 694 (1984). Either prong may be addressed first, and the failure to demonstrate prejudice obviates the need for the court to address the counsel performance prong, and vice versa. *Id.* at 697.

When considering whether counsel's performance fell below an objective standard of reasonableness, courts must "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo v. Moore*, 562 U.S. 115, 122 (2011) (citing *Strickland*, 466 U.S. at 688). The petitioner has the burden to show that counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

2

In other words, the petitioner must show that his counsel's representation was incompetent under prevailing professional norms, not merely that it deviated from best practices or common custom, and that the conduct was not sound trial strategy. *Strickland*, 466 U.S. at 690. Courts must be highly deferential and consider what the circumstances of the attorney's conduct at the time of the performance, not with the benefit of hindsight. *Id.* at 689. It is especially difficult to challenge strategic decisions made after a thorough investigation of the relevant law and facts; such decisions are "virtually unchallengeable." *Rayborn v. United States*, 489 F. App'x 871 (6th Cir. 2012) (citing *Strickland*, 466 U.S. at 690). Finally, defendants cannot compel their attorneys to assert even non-frivolous arguments if counsel decides not to press those points as a matter of professional judgment. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

## III.   Discussion

White has raised only claims of ineffective assistance in her collateral attack on her conviction. Some of those claims have already been addressed on direct appeal, such that they are foreclosed from additional consideration here.

### A. White may not relitigate the scope of 18 U.S.C. § 1028A or the Court's loss-calculation.

White first claims that she was deprived effective assistance of counsel at both the trial and appellate phase because her attorneys did not argue that her conduct did not meet the elements of 18 U.S.C. § 1028A, and thus, there was insufficient evidence to support her conviction.[2] (PageID.2351.)

---

[2] White frames this claim several different ways. At various points, she argues that her counsel was ineffective for "not attacking the First Superseding Indictment; where the defendant's conduct did not raise to the

3

But contrary to White's current claim, she argued on appeal that the Court had misapplied Sixth Circuit precedent relevant to the scope of § 1028A. The Sixth Circuit rejected the claim, finding that White's conduct fit squarely within the bounds the statute as the evidence at trial demonstrated that White had created false military identification cards and attempted to pass them off as her clients' own personal means of identification. *White*, 846 F.3d at 178. The Sixth Circuit therefore concluded that "White was properly convicted pursuant to 18 U.S.C. § 1028A because when she manufactured and submitted to the airlines the fraudulent military identification cards, she "used," without lawful authority, a means of identification of another person during and in relation to the wire-fraud felony of which she was convicted." *Id.*

Now, rather than claiming that she did not "*use*" a means of identification, White claims that her counsel was ineffective for failing to contest that the forged military identification cards *were* a "means of identification" (PageID.2351.) This claim comes far too close to her prior argument made before the court of appeals to be considered in a subsequent § 2255. *See DuPont v. United States*, 76 F.3d 108, 110–11 (6th Cir. 1996). "Absent exceptional circumstances, or an intervening change in the case law, [White] may not use [her] § 2255 petition to relitigate this issue." *Wright v. United States*, 182 F.3d 458, 468 (6th Cir. 1999) (citing *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996). As

---

elements charged in Count 2[,]" or that the evidence was insufficient to convict her at trial based on the same logic, so her trial counsel's Rule 29 motion fell below an objective standard of reasonableness. No matter how White frames the issue now, it has already been resolved on direct appeal.

White has not alleged either exceptional circumstances or an intervening change in law, this claim is barred by the relitigation doctrine.[3]

White also re-raises the Court's loss-calculation under the rubric of ineffective assistance of counsel. Like her claim as to the scope of § 1028A, this claim is barred by the relitigation doctrine because it, too, was raised and rejected on direct appeal:

> White's final argument is that the district court was speculative and incorrect in calculating the amount of loss the airlines suffered. The Probation Office calculated the loss to White's victims under U.S.S.G. § 2B1.1(b)(1)(H), which requires at least $400,000 but not more than $1,000,000 in intended loss. The method for calculating loss was adduced at trial from the testimony of various airline representatives. White argues that the airlines' testimony regarding their loss calculation, which the district court admitted at trial over White's repeated objections, was "subjective" and that it "significantly overestimated" the amount of loss to the airlines. . . .
>
> * * *
>
> We cannot conclude from the record that the district court's determination of loss in this case was "outside the universe of acceptable computations," or that the methodology used to calculate loss was incorrect. The trial record reveals that the airlines used standard ticket-auditing practices to determine the difference between the fares White obtained fraudulently and the next-cheapest fare possible. Several of the airline witnesses testified about the auditing process during trial, and several audit records were admitted into evidence.
>
> Prior to sentencing, White filed several objections to the PSR, and the government responded. In her sentencing memorandum, White stated her belief that "[t]he elements of the loss calculation are incorrect and overstated." At sentencing, the government represented that "[a]s far as the guidelines go, meeting with [White's counsel], there is no dispute at this point as to the loss figures.... [White's counsel] has looked over my filing, Docket Number 116, and agrees with the government's calculations as far as loss goes." The government then specified the loss amount as $663,610. White's counsel then

---

[3] Even if the claim were not barred, White could not establish ineffective assistance of counsel, as she has not demonstrated that her counsel fell below an objective standard of reasonableness by failing to challenge whether a forged military ID fit within the statutory definition of "means of identification."

stated, "I agree on the loss number that we have come to, your Honor, in this sense: Of course we have raised objections about the admissibility of the government's evidence and, of course, preserve those objections. But we have no objections or want to present no different proofs on these points.... [W]e have come to an agreement on this loss number." The parties thus agreed that the total loss attributable to White for guidelines calculation purposes was $663,610.

The record does not support a finding that the loss calculation offered by the government and accepted by the district court was outside the universe of acceptable computations. Indeed, the method used to calculate the loss was one that several airline industry witnesses agreed was reasonable, and White did not present evidence that an alternate theory was preferable. Moreover, White did not present evidence that her method would result in an amount below the beginning of the range in U.S.S.G. § 2B1.1(b)(1)(H) of $400,000. The district court's determination of the loss attributable to White was not clear error, and its method was reasonable. We therefore affirm the district court's conclusion regarding calculation of the loss.

*White*, 846 F.3d at 179 (citations to the record omitted). Thus, the Sixth Circuit has already squarely addressed the loss-calculation issue and has rejected White's arguments that the final loss attributable to her was erroneous. Thus, it cannot be re-raised now under the ineffective assistance of counsel rubric. *Wright*, 182 F.3d at 467 (enforcing principle that "2255 petition not a vehicle for relitigating issues rejected on direct appeal"); *United States v. Jackson*, 429 F. App'x 757, 761 (10th Cir. 2011) (denying certificate of appealability on ineffectiveness claim because underlying issue resolved on direct appeal).

### B. White's remaining claims for ineffective assistance of counsel are meritless.

White's remaining claims can be fairly categorized into the five categories to follow. Upon review, the Court finds that White has not demonstrated ineffective assistance of counsel under any of the grounds alleged.

1. The Plea Agreement

White first states in conclusory terms that her trial counsel fell below an objective standard of reasonableness when advising her with respect to plea negotiations. White claims that her trial counsel "failed to convey that withdrawing from the plea agreement was not mandatory, advised client to withdraw, . . . and later advised it was unlawful for the defendant to plead guilty to count 1 and seek another plea on count 2 or go to trial on count 2 alone." White claims that she relied on this advice and withdrew from the plea agreement, which later prevented her from pleading guilty to count one and proceeding to trial solely on Count 2. (PageID.2353.)

This claim is easily dispatched. As the government notes, White's ability to take the plea agreement ended when the Court granted the government's motion to withdraw the plea agreement as to both Joseph and Sandra White. (ECF No. 52; *see also* ECF No. 74.) The government's motion was triggered by Joseph White's refusal to perform his portion of the joint resolution that had been negotiated—i.e. he refused to enter into a pretrial diversion program. (*See* ECF Nos. 46; 49; 74.)

White's confusion apparently comes from the distinction between pleading guilty with or without a plea agreement. Based on a review of the record, there is no question that White was not entitled to the plea agreement once Joseph White failed to perform. She apparently— and mistakenly—believes that "withdrawing from the plea agreement was not mandatory." (PageID.2353.)

However, Ms. White never withdrew from the plea agreement; she did not have the option to do so, because the government took the deal off the table. And moreover, while

White could have persisted with her guilty *plea*, she would have been proceeding without the benefit of any plea agreement. Under these circumstances, White cannot demonstrate that there was a reasonable probability that the charges against her would have been resolved more favorably than her actual judgment and sentence. *Lafler v. Cooper*, 566 U.S. 156 (2012). As the government notes, no second plea offer was forthcoming. Without such a showing of prejudice, the claim must fail. *Id.*; *see also Strickland*, 466 U.S. at 694.

2. Forfeiture

White's next claim is that her counsel was ineffective for not challenging the pretrial encumbrance of her residence or the subsequent inclusion of the residence in the forfeiture allegation of the indictment. However, [f]orfeiture sentences are not cognizable in § 2255 proceedings." *McGee v. United States*, 2010 WL 310770, at *6 (W.D. Mich. Jan. 21, 2010) (citing *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir.1995)); *see also United States v. Hames*, 2010 WL 1741328, at *4 (N.D. Tex. Apr. 29, 2010) ("Claims of ineffective assistance of counsel based upon restitution and forfeiture are not cognizable in a § 2255 action because they do not relate to unlawful custody."). Thus, this claim is meritless.

3. Expert Witnesses

White next theorizes that her trial counsel was ineffective for not researching her case: "Counsel's failure to investigate and present any defense or call any witnesses including airline fairing and ID Theft experts left the defendant with nothing to counteract the evidence shown to the jury by the prosecutor. As a result the jurors were left with no choice but to view the defendant as a calculating individual." However, she does not address what

testimony or evidence her proposed experts would have provided or how it would have resulted in a materially different outcome at trial.

As the government notes, any "ID Theft" expert could not have offered testimony as to whether or not White's conduct amounted to identity theft. *See* Fed. R. Evid. 704(b). Thus, White has not established that her counsel's failure to obtain an ID Theft expert amounts to ineffective assistance of counsel, as she has not demonstrated that the lack of such an expert resulted in prejudice.

As to the "airfaring" expert, the only possible import of such testimony would be the loss amount. As an initial matter, this issue falls under the relitigation doctrine, as already described in Section III.A. Moreover, White has not shown either deficient performance or prejudice by her counsel's failure to obtain an airfaring expert because such an expert would have had no impact on White's guilt or innocence, and White has not demonstrated that such an expert would have established a loss calculation materially different than the one ultimately accepted by the Court. In essence, White has offered nothing more than pure speculation to suggest that if a hypothetical expert witness had been called, he or she might have concluded that the financial damage caused by her crimes was less than otherwise calculated by the Court. This is insufficient to meet her burden under § 2255(b).

### 4. Other Sentencing Issues

White offers various other objections to her sentence under the guise of ineffective assistance of counsel. For instance, she says that her counsel was ineffective for failing to object to the Court's use of a preponderance of the evidence standard when evaluating potential sentencing enhancements. This claim is frivolous. *See United States v. Louchart*,

9

680 F.3ed 635, 637 (6th Cir. 2012) ("A district court may enhance a sentence based on relevant conduct so long as its factual findings are supported by a preponderance of the evidence and the sentence imposed does not exceed the statutory maximum.").

White also argues that her counsel was ineffective when he failed to object when the Court *sustained* her objection to the victim-tally enhancement and applied a two-level enhancement, rather than the four-level enhancement that applied if White's crimes had more than fifty victims. White's counsel successfully argued to the Court that the persons whose means of identification were used to produce fake AFID cards should be not be included as victims, and the Court instead counted only the businesses that had suffered financial loss.

Under these circumstances, the Court discerns neither deficient performance nor prejudice because the two-level enhancement was properly applied. And moreover, rather than deficient performance, the record demonstrates that White's counsel successfully persuaded the Court to reject the government's argument for the greater enhancement. No claim for ineffective assistance lies here.

White next faults her counsel for the Court's application of the sophisticated means enhancement. The Court held that the sophisticated means enhancement applied because the fraud involved "a matrix of forged documents, manipulation of automated ticket systems, [and] fraudulent bookkeeping, among other acts." (PageID.2216.) The Court considered this constellation of behavior to amount to sophisticated means, referencing two opinions of the Sixth Circuit.

The Court's ruling came notwithstanding White's counsel's vigorous argument that the sophisticated means enhancement should not apply, arguing that White's fraud was not uniquely complex. (PageID.2212–14.) That is the same argument that White now asserts that counsel *should* have made. (PageID.2362 ("There is nothing particularly sophisticated about the defendant issuing airline tickets or the methods she employed to explain the faring discrepancies once detected.").) After a full review, the Court does not find that habeas relief is warranted on this claim, as White's counsel did not fall below an objectively reasonable standard of performance in his argument regarding the sophisticated means enhancement, and instead was well within the bounds of professionally-acceptable representation, and thus no Sixth Amendment violation occurred.

White's last sentencing enhancement-related objection is that her counsel failed to object to a "non-existent" enhancement under "U.S.S.G. § 2B1.1(b)(11)(ii)." (PageID.2362.) As the government notes in response, this is an obvious clerical error, contained in the Pre-Sentence Report. The proper citation was § 2B1.1(b)(11)(C)(ii), which provides for an enhancement where an offense involved the possession of five or more means of identification that were unlawfully produced or obtained. Counsel's failure to object to a clerical error establishes neither deficient performance nor prejudice, as the record makes clear that the enhancement was properly applied.

5. Conflicts of Interest & Cumulative Error

In a final parting shot, White raises cumulative error, ineffective assistance based on trial counsel's failure to file a motion for the undersigned's recusal, and ineffective assistance

of counsel based on her attorney's friendly relationship with the United States Attorney's Office. (PageID.2363.)

The Court considers all of these issues waived, as White has not done more than raise threadbare claims for relief, without establishing the factual predicate for the claim. *See* 28 U.S.C. § 2255(b). "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (quoting *Citizens' Awareness Network v. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)). As to recusal, White has not developed any argument as to how her counsel rendered ineffective assistance for failing to file such a motion or demonstrated that she was prejudiced by the same. As to her counsel's relationship with the United States Attorney's Office, White has not alleged that her counsel's allegedly cordial relationship with the government prejudiced her. And finally, as to cumulative error, the Court has ascertained no error, and thus White's claim of cumulative error has no merit.

## IV.    Conclusion

Based on the foregoing, the Court concludes that White's collateral attack on her conviction under Section 2255 is without merit, so it will thus be denied, and judgment shall enter.

12

## ORDER

Based on the foregoing opinion, White's pro se motion to vacate, set aside, or correct her sentence (ECF No. 163) is **DENIED**.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court must assess whether to issue a certificate of appealability. To warrant the grant of a certificate of appealability, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Reasonable jurists would not find the Court's assessment of Defendant's claim debatable or wrong. A certificate of appealability is **DENIED.**

**IT IS SO ORDERED.**

Dated: June 19, 2019                               /s/ Paul L. Maloney
                                                            Paul L. Maloney
                                                            United States District Judge